IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WILLIAM RODRIGUEZ RODRIGUEZ, ARYNETTE RIVERA OLIVERA; and, INNOVA HOME SOLUTIONS, INC.<br><br>        Plaintiffs,<br><br>                v.<br><br>CODE GREEN SOLAR PUERTO RICO, LLC; CODE GREEN SOLAR, LLC; CHARLES KARTSAKLIS; SUNNOVA ENERGY CORPORATION,<br><br>        Defendants. | CIVIL ACTION NO. 16-2674 (JAG) |

**MOTION TO COMPEL ARBITRATION,
OR TO ENFORCE FORUM SELECTION CLAUSE AND DISMISS**

TO THE HONORABLE COURT:

COMES NOW Sunnova Energy Corporation, without submitting to the jurisdiction or venue of this Court or waiving any defenses, and states and prays as follows:

**I.**

**INTRODUCTION**

This is an action brought by Innova Home Solutions, Inc. (formerly known as Innowave Energy, Inc.)("Innowave"), its sole shareholder Arynette Rivera Oliveras, and her husband against Code Green Solar, LLC, Code Green Puerto Rico, LLC, Charles Kartsaklis and Sunnova. See Dkt 11 at ¶¶ 10 – 11.  Both Innowave and Code Green Solar, LLC have been non-exclusive solar installers for Sunnova pursuant to contracts called Channel Partner Agreements.   On or about November 25, 2015, Innowave sold certain of its assets to Code Green Puerto Rico, LLC.  Id. at ¶ 82.

Regarding Sunnova, the gravamen of the Amended Complaint is that Sunnova allegedly breached financial obligations under its June 17, 2014 Channel Partner Agreement with Innowave ("Innowave CPA") and made threats so as to pressure the latter to sell its assets to Code Green Puerto Rico, LLC.  See Dkt. 11at ¶¶ 132-133. As shown below, this action was thus filed in defiance of the mandatory arbitration clause in Article 18.1 of the Innowave CPA.

The Amended Complaint purports to state five "causes of action" or claims, only two of which are specifically asserted against Sunnova. These "causes of action" are:

- The "*First Cause of Action-Breach of Contract*", which is "*asserted against Code Green Puerto Rico*" and premised on the Asset Purchase Agreement between Innowave and Code Green; See Dkt. 1 at ¶¶ 120-126.

- The "*Second Cause of Action-Deceit in Contracting*", which is "*asserted against Code Green Puerto Rico*" but repeats the allegations that Sunnova allegedly breached financial obligations under the Innowave CPA, and relies on allegations of a "bait and switch" of schedules to the Asset Purchase Agreement by Code Green Puerto Rico at the closing with Innowave;  Id. at ¶¶ 127-137.

- The "*Third Cause Action-Damages*", which is "*asserted against all Defendants*" and repeats the allegations that Sunnova allegedly breached financial obligations under the Innowave CPA; Id. at ¶¶ 138-143.

- The "*Fourth Case of Action- Fraud and Identity Theft*", which is asserted against Code Green Puerto Rico, Kartsatklis and Sunnova, and seeks conclusorily asserted damages, is premised on a purportedly unauthorized use of Innowave's principal's electronic signature on sales contracts, work orders and

certifications in the period after the closing of the Asset Purchase Agreement and January 31, 2016 and invokes 18 U.S.C. §§ 1028 & 1028A; Id. at ¶¶ 144-149.

- The "*First Cause of Action-Restitution of Monies Improperly Received"*, which is "asserted against Code Green Puerto Rico", and only seeks restitution of monies purportedly received by Code Green Puerto Rico in excess of the accounts receivable assigned to it in the Asset Purchase Agreement.   Id. at 150-157.

Innowave's claims against Sunnova fall within the scope of the broad mandatory arbitration clause of Article 18.1 of the Innowave CPA.  Accordingly, and pursuant to Sections 3 & 4 of the Federal Arbitration Act, 9 U.S.C. §1 et seq. ("FAA"), Sunnova requests that the Court compel Innowave to arbitrate its purported claims against Sunnova, dismissing such claims without prejudice and staying this lawsuit as to the non-signatories to the Innowave CPA, Inc. pending resolution of said arbitration.

As alternate relief as to all claims except for the "*Fourth Cause of Action",* Sunnova requests that the Court dismiss the  Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and the Houston, Harris County, Texas forum and venue selection clause in a November 17, 2017 Letter Agreement between Sunnova, Code Green LLC and Innowave.  Dismissal is proper because the aforementioned forum selection clause does not select a federal forum and instead mandates that the proper venue is Houston, Harris County, Texas.   In the alternative, if the Court finds that the language of the forum selection clause does not foreclose a transfer within the federal system, then Sunnova requests that the Court transfer the case to the U.S. District Court for the Southern District of Texas which is located in Houston, Harris County, Texas.

Lastly, and pursuant to Fed. R. Civ. P. 12(b)(6), Sunnova requests dismissal of the "*Fourth Cause of Auction-Identify Theft*" for failure to state claim upon relief can be granted. That purported claim in premised on bald and conclusory assertions of violation of federal criminal statutes that do not provide for a private right of action.

## II.

## STATEMENT OF OPERATIVE FACTS

A.      Innova Home Solutions, Inc., formerly known as Innowave Energy, Inc. ("Innowave"), is a corporation organized under the Laws of the Commonwealth of Puerto Rico with principal place of business in Yauco, Puerto Rico, Puerto Rico.  See Dkt. 11 at ¶ 11; Id. at fn. 1.

B.      Code Green Puerto Rico, LLC is a limited liability company organized under the laws of the Commonwealth of Puerto Rico whose members are residents of the State of New Jersey.  See Dkt. 1 at ¶ 12.

C.      Code Green Solar LLC is a limited liability company organized under the laws of the State of New Jersey whose members are citizens of New Jersey.  Id. at ¶ 13.

D.      Charles Kartsaklis is a citizen of the State of New Jersey and President of Code Green Solar, LLC and Code Green Puerto Rico, LLC. Id. at ¶ 14.

E.      Sunnova is a corporation organized under the laws of the State of Delaware, with its principal place of business in Houston, Texas. Id. at ¶ 15

F.      Sunnova is in the business of financing third-party-owned residential solar energy Systems.  Id. at ¶19.

G.      Sunnova, is active in twenty-three (23) states and territories including Puerto Rico. In all of those markets Sunnova identifies local installation partners, such as Innowave, which sell, install and maintain rooftop systems on homes.   Id. at 20.

H.     On June 17, 2014, Sunnova and Innowave executed a Channel Partner Agreement for the marketing, installation and leasing of solar systems. See Dkt. 1 at¶ 21; Channel Partner Agreement between Sunnova Energy Corporation and Innowave Energy, Inc, filed under "Parties Only" restriction as Exhibit A to Exhibit 1hereto.   The solar systems incorporated solar panels, inverters and metering equipment manufactured outside of Puerto Rico.  See Declaration of Karla M. Zambrana Meléndez, attached as Exhibit 1 hereto.

I.     Article 7 of the Channel Partner Agreement between Innowave and Sunnova provides for arbitration of payment disputes:

7.6. Payment Disputes

7.6.1. Partial Payment; Accrual of Interest. In case of a dispute with respect to a portion but not all of any payment amount, Sunnova or Contractor shall pay the undisputed portion promptly in accordance with this Agreement. Contractor's or Sunnova's acceptance of partial payment shall not be deemed to constitute a waiver of the right to receive amounts which are then in dispute, and Contractor and Sunnova shall use their best efforts to resolve all disputed amounts as soon as practicable. Any amounts not paid when due (including disputed amounts which are subsequently determined to have been properly due) or any amounts paid which are subsequently determined not to have been properly due shall bear interest at the Base Rate from the original due date until paid.

7.6.2. Resolution of Disputes. **In the event of a dispute between the Parties regarding any entitlement to any payment under this Agreement, either Party shall have the right to refer the dispute for resolution in accordance with Article 18**. Pending resolution of such dispute, Contractor shall continue its performance of the Work in accordance with this Agreement. **Amounts determined by dispute resolution according to Article 18 to have been properly due shall be payable by the owing Party**, together with accrued interest at the Base Rate on such amount from the time payment was originally due to the date of payment, **within ten (10) days after** (i) the effective date of the Parties' negotiated settlement or (ii) **absent such settlement, the Arbitration Award issued under Article 18.**

See Exhibit A  at p. 11 (emphasis added).

J.     Article 18.1 of the Channel Partner Agreement between Innowave and Sunnova provides  for  final  and  binding  arbitration  of  any  dispute  or  any  claim  arising  out  or  in

5

connection with said agreement or its breach termination or validity, which arbitration is to be

conducted in accordance with the Commercial Rules of the American Arbitration Association

and take place in Houston Texas:

> 18.1.  <u>Arbitration of Claims</u>**. Any dispute, controversy, difference or claim arising out of or in connection with this Agreement, or the breach, termination or validity of this Agreement, which cannot be amicably resolved by the Parties shall be submitted to final and binding arbitration in Houston, Texas**, in accordance with Commercial Arbitration Rules of the American Arbitration Association (the "AAA Commercial Rules"). The arbitration shall be conducted by one arbitrator who shall be appointed in accordance with the AAA Commercial Rules. If any Party is authorized by the AAA Commercial Rules to nominate, select, approve or disapprove an arbitrator but fails to do so within thirty (30) days after filing of the demand for arbitration, such arbitrator shall be appointed by the American Arbitration Association upon request of the other Party.

<u>See</u> <u>Exhibit A</u> at p 21 (emphasis added).

K.     Article 21.1 of the Channel Partner Agreement between Innowave and Sunnova

contains a Texas choice of law clause:

> 21.1   <u>Governing Law</u>.  **This Agreement shall be governed by the laws of the State of Texas** (without giving effect internal principles of conflicts of laws)

<u>See</u> <u>Exhibit A</u> at p. 26 (emphasis added).

L.     On November 17, 2015 Sunnova, Code Green and Innowave entered into a

Letter Agreement.  <u>See</u> <u>Exhibit B</u> to <u>Exhibit 1</u> hereto.

M.     In the November 17, 2015 Letter Agreement, both Code Green and Innowave

declared that they had not relied on any representation made by or behalf of Sunnova to enter

into the transaction whereby Code Green Puerto Rico purchased assets from Innowave:

> **Neither CODE Green nor Innowave has relied upon any representations made by, or other information (whether oral or written) furnished by or on behalf of, Sunnova or any director, officer, employee, agent or affiliate of Sunnova or any of its affiliates in considering whether to engage in the Acquisition Transaction**.  Each of CODE Green and Innowave has carefully considered and has, to the extent it believes necessary, discussed with its legal,

6

tax, accounting and financial advisors of choice about the advisability of the Acquisition Transaction in light of its particular tax, legal and financial situation. The Parties affirm that they have independently conducted the due diligence they believe is reasonable and necessary to accomplish the Acquisition Transaction.  It is expressly understood by the parties that Sunnova has not made any representations or warranties, express or implied, as to the Acquisition Transaction including but not limited to (a) the current or future business condition, financial condition or legal status of CODE Green or Innowave or any of their owners, directors, officers, employees, agents or affiliates; (b) the current or future regulatory environment in Puerto Rico; or (c) the current or future commercial market, pricing, EPC rate structure or sales forecast for Sunnova's products in the territory of Puerto Rico.

See Exhibit B to Exhibit 1 hereto at ¶ (1) (emphasis added).

N.     In the November 17, 2015 Letter Agreement,  Code Green and Innowave granted Sunnova a release from any and all claims arising from or in any way relating to the transaction whereby Code Green Puerto Rico purchased assets from Innowave.  Code Green and Innowave granted this release on behalf of themselves and of their related juridical and natural persons.  See Exhibit B to Exhibit 1 at ¶ (2).  Code Green and Innowave also agreed not sue each other or Sunnova with respect to the claims covered by the release.  Id.  at ¶ (3).

O.     In the November 17, 2015 Letter Agreement, Code Green, Innowave and Sunnova agreed to a Texas choice of law and a Houston, Texas choice of forum and venue in the event of dispute under said agreement:

This letter agreement shall be governed by and construed in accordance with the laws of the State of Texas. **Venue under any dispute hereunder shall be in Houston, Harris County, Texas**.  In any suit, to enforce this Agreement, the prevailing party shall have the right to recover its costs and reasonable attorneys' fees and expenses, including costs, fees and expenses on appeal.

Id. at ¶ (4) (emphasis added).

P.  The November 17, 2015 Letter Agreement was signed by Arynette Rivera Oliveras as President of Innowave Energy, Inc. Id. at p. 2.

Q.  On September 16, 2016, Innowave filed the instant action.  See Dkt. 1.

**III.**

**ARGUMENT**

**A.    Innowave should be compelled to arbitrate all of its purported claims against Sunnova as they the fall within the scope of a written arbitration involving commerce.**

Applicable law:

Under First Circuit precedent, "[i]n deciding a motion to compel arbitration, a court must ascertain whether: "(i) there exists a written agreement to arbitrate, (ii) the dispute falls within the scope of that arbitration agreement, and (iii) the party seeking an arbitral forum has not waived its right to arbitration." Gove v. Career Systems Development Corp., 689 F. 3d 1, 4 (1st Cir. 2012). If these factors are met, the court must enforce the arbitration agreement in accordance with its precise terms. See AT&T Mobility LLC v. Concepcion, 131 S. Ct. 1740, 1748 (2011). Because of the strong policy favoring arbitration, any doubts are to be resolved in favor of the party moving to compel arbitration. See Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983).

Section 2 of FAA, 9 U.S.C. § 2, provides:

> **A written provision** in any maritime transaction or **a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction**, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction or refusal, **shall be valid, irrevocable and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract.**

(Emphasis added). The U.S. Supreme Court has stated that section 2 of the FAA "is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary. The effect of the section is to create a body of federal substantive law of arbitrability, applicable to any arbitration agreement within the coverage of the Act." Moses H. Cone Memorial Hospital v.

8

Mercury Const. Corp., 460 U.S. 1, 24 (1983).

"Given the established "liberal federal policy favoring arbitration agreements," Moses H. Cone, 460 U.S. at 24, "**as a matter of federal law, any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability**." Id. at 24-25 (emphasis added). Indeed, it is well-settled that questions of arbitrability must be dealt with a high regard for the federal policy in favor of arbitration, and any doubts concerning the scope of an arbitration agreement should be resolved in favor of arbitration. See Colon de Sanchez v. Morgan Stanley Dean Witter, 376 F.Supp.2d 132, 135 (D.P.R. 2005); Carro v. Parade of Toys, Inc., 950 F. Supp. 449, 451-452 (D.P.R. 1996); Cardona Tirado v. Shearson Lehman American Exp., Inc., 634 F. Supp. 158, 159 (D.P.R. 1986).

"[T]here is a split in authority as to how Court's characterize dismissal on arbitrability grounds, with some courts treating the dismissal as jurisdictional and thus pursuant to Rule 12(b)(1); other courts treating the dismissal as 'failure to state a claim cognizable in federal court' and thus pursuant to Rule 12(b)(6); and still others treating the dismissal as "entirely separate from the Rule 12(b) rubric"". See Cortes-Ramos v. Sony Corporation Of America, 2016 WL 4709808 (1st Cir. 2016), citing Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727. 732 (7th Cir. 2005).  Under both Fed R. Civ. P. 12 (b)(1) and 12(b)(6), the Court takes well pleaded facts as true and may consider exhibits without conversion to summary judgment. See Meléndez v. Starwood Hotels and Resorts Worldwide; 939 F. Supp. 2d 88, 90 (D.P.R. 2013) (García-Gregory, J.), (case compelling arbitration and dismissing claims under Fed. R. Civ. P. 12(b)(1)); Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007) (Stating that when ruling on Fed. R. Civ. P 12(b)(6) Motions to dismiss courts ordinarily

consider documents incorporated into the complaint by reference).

Discussion

Section 18 of the Innowave CPA contains a mandatory arbitration clause which provides that "[a]ny dispute, controversy, difference or claim arising out of or in connection with this Agreement, or the breach, termination or validity of this Agreement, which cannot be amicably resolved by the Parties shall be submitted to final and binding arbitration in Houston, Texas." See Section II, supra at ¶ J.  As shown below, that broad arbitration clause encompasses the claims purportedly made against Sunnova in the Complaint which are premised on alleged breaches of, and threats concerning, the Channel Partner Agreement.  And all other the elements required to compel arbitration are present.  Thus, Innowave should be compelled to arbitrate the claims purportedly made in the Complaint against Sunnova.

**There is a written arbitration agreement**. As set out in the above Statement of Operative Facts, Article 18.1 of Innowave CPA contains a mandatory arbitration clause.  See Section II, supra at ¶ J.

**The commercial relationship between the parties satisfies the FAA's "involving commerce" requirement**.   Innowave is a Puerto Rico corporation. See Section II, supra at ¶ A.  Sunnova is a Delaware corporation with principal place of business in Houston, Texas and operating in 23 states and territories which entered into an agreement with Innowave for the marketing, installation and leasing of solar systems in Puerto Rico.   The solar systems incorporated components manufactured outside of Puerto Rico.  Id. at ¶¶ E-G.  These facts easily satisfy the FAA's interstate commerce requirement.   See Citizens Bank v. Alafabco, Inc., 539 U.S. 52, 56 (2002)(holding that debt restructuring agreement signed in Alabama between Alabama residents involved interstate commerce because, *inter alia*, one of the parties engaged in business throughout the Southeastern United States and proceeds of

restructured loans was used in construction projects in three states); Allied-Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 282 (1995)(holding that the contract at issue involved interstate commerce because, in addition to the multistate nature of the parties, the material used in carrying out the terms of the contract, came from another state); see also Ideal Limited Services Corp. v. Swift-Eckrich, Inc., 727 F. Supp. 75, 77 (D.P.R. 1989)(holding that a contract for the warehousing and import of U.S. products into Puerto Rico involved interstate commerce under section 2 of the FAA and, thus, claims were subject to arbitration).

**The dispute falls within the scope of the arbitration agreement.**   Article 18.1 of the Innowave CPA requires final and binding arbitration of "[a]ny dispute, controversy, difference or claim arising out of or in connection with this Agreement, or the breach, termination or validity of this Agreement, which cannot be amicably resolved by the Parties…" See Section II, supra at ¶ J.   Such language is "paradigmatic" of a broad arbitration clause. See Spinelli v. National Football League, 96 F.Supp. 3d 91 (S.D.N.Y. 2015)(an arbitration clause covering any claim or controversy arising out of or relating to an agreement is the paradigm of a broad clause). The First Circuit has interpreted broad language of this nature as covering *"contract-generated or contract related disputes between the parties however labeled: it is immaterial whether claims are in contract or in tort."* Acevedo Maldonado v. PPG Indus. Inc., 514 F.2d 614, 616-17 (1st Cir.1975)(emphasis added). That is, it has rejected the labeling of controversies arising out of or relating to the contract so as to exclude them from the scope of arbitration. See also Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc., 105 S.Ct. 3346 (1985) (agreement to arbitrate "all disputes, controversies or differences which may arise between [parties] out of or in relation to [certain articles] of this Agreement or for the breach thereof" was sufficiently broad to encompass claims under the Sherman Act, Federal Automobile Dealers' Day in Court Act, Puerto Rico Dealers' Act and Puerto Rico antitrust and

unfair competition statute); <u>Sweet Dreams Unlimited, Inc. v. Dial–A–Mattress Int'l, Ltd.</u>, 1 F.3d 639, 642 (7th Cir.1993) (noting that "arising out of" covers all disputes "having their origin or genesis in the contract, whether or not they implicate interpretation or performance of the contract per se").

*All of Innowave's claims against Sunnova arose out of, and are connected to, the Innowave CPA or purported breaches of the same.* The Amended Complaint alleges that Sunnova breached its payment obligations under the Innowave CPA and made threats to terminate said agreement in order to pressure Innowave into selling its assets to Code Green Puerto Rico:

> Sunnova purposefully and unilaterally changed the milestones and payment schedule it had agreed with Plaintiffs, and started defaulting as to its payment obligations, even after the new schedule. These actions strangled Plaintiffs economically, making them an easy target for Defendants' plan to take over Plaintiffs' operations. In addition, Sunnova actively threatened Plaintiffs as to terminating the Channel Partner Agreement and cancelling the pending solar system projects. Sunnova even asserted at the early stages of the asset purchase negotiations that Innowave was worthless, since Sunnova could terminate all of its agreements in a whim.

<u>See</u> Dkt. 1 at ¶ 132.   The Amended Complaint also alleges that Sunnova's breaches of its payment obligations and threats to terminate the Innowave CPA led Innowave to sell its assets caused Innowave to sell its assets to Code Green Puerto Rico:

> Had it not being for the economic distress provoked by Sunnova's default as to the payment schedules, Sunnova's threats to terminate the Channel Partner Agreement and cancel the pending solar system projects, and its public comments as to Innowave's worth, Plaintiffs would have never sold Innowave's assets.

<u>See</u> Dkt. 1 at ¶ 133.   The foregoing allegations are part of each and every one of the "causes of action" in the Amended Complaint.    Dkt. 1 at ¶¶   120-126, 127-137, 138-143, 144-149, 150-157.   Plaintiffs even quote the Innowave CPA's milestone payment schedule in their

Amended Complaint. See Dkt. 11 at ¶ 21.  Simply put, Innowave cannot seriously deny that its claims arise out of, and are connected to its Channel Partner Agreement with Sunnova.

**Sunnova has not waived its right to arbitration**.  Sunnova is raising the issue of arbitration at the very inception of litigation thus no credible argument of waiver can be made. See Creative Solutions Group, Inc. v. Pentzer Corp., 252 F.3d 28, 32 (1st Cir. 2001)(finding that defendant did not waive right to arbitration where it moved to compel arbitration two months after it was required to plead to the complaint (and five months after plaintiffs filed the action); Rodríguez Font v. Paine Webber Incorporated, 649 F. Supp. 462 (D.P.R. 1986)(finding that defendant did not waive arbitration by engaging in discovery or by waiting two years to file motion to compel arbitration, where affirmative defense of arbitration had been raised in defendant's answer).

**The claims against Sunnova should be dismissed in favor of arbitration**. Section 3 of the FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referrable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. Section 3 of the FAA requires the Court to stay the proceedings "until such arbitration has been had in accordance with the terms of the agreement," 9 U.S.C. § 3. The Court may dismiss the case, however, 'when all of the issues before the court are arbitrable'." Ponce Roofing, Inc. v. Roumel Corp., 190 F. Supp. 2d 264, 266 (D.P.R. 2002) (quoting Bercovitch v. Baldwin School, Inc., 133 F.3d 141, 156 n. 21 (1st Cir.1998); Sea–Land Serv., Inc. v. Sea–Land of Puerto Rico, Inc., 636 F.Supp. 750, 757 (D.P.R.1986). In this case, dismissal, rather than a stay, is appropriate because all of Innowave's claims against

Sunnova are completely encompassed by the arbitration clause. See Ideal Limited Services Corp. v. Swift-Eckrich, Inc., 727 F. Supp. at 78 (finding dismissal without prejudice appropriate when all issues presented in the complaint are arbitrable) *(quoting* Sea–Land Services, Inc. v. Sea–Land of P.R., Inc., 636 F. Supp. 750, 757- 758 (D.P.R. 1986) ("Given our ruling that all issues raised in this action are arbitrable, retaining jurisdiction and staying the action will serve no purpose.").

**The claims against Code Green LLC, Code Green Puerto Rico, LLC and Mr. Karsatklis should be stayed pending resolution of the arbitration**. The Court can expect that plaintiffs will argue that the presence of aforementioned third parties that are not signatories of the Innowave CPA weighs against arbitration.  Such an argument will be futile. First Circuit precedent provides that the joinder of third-parties to an action cannot defeat arbitration. Consequently, Innowave's joinder of third parties merely requires a stay of proceedings pending resolution of the arbitration.

If arbitration clauses could be defeated simply by joining to a lawsuit persons who were not parties to the arbitration agreement, then the FAA's public policy in favor of arbitration would be rendered useless. See Hilti v. Oldach, 392 F.2d 368, 369 fn. 2 (1st Cir. 1968); see also C. Itoh (America), Inc. v. The Jordan International Company, 558 F.2d 1228, 1231 (5th Cir. 1977); Rodríguez Font v. Painewebber Incorporated, 649 F.Supp. 462, 466 (D.P.R. 1986). The joinder of third-parties who are not bound by or benefitted by an arbitration agreement simply results in a stay of claims by or against those third-parties pending the results of the arbitration. See Awuah v. Coverall North America, Inc., 703 F.3d 36 (1st Cir; 2012)(ordering stay of claims by plaintiff franchisees who were not bound by arbitration pending arbitration of by plaintiff franchisees who were bound by arbitration); Mélendez v. Starwood Hotels & Resorts Worldwide, 939 F.Supp.2d 88 (D.P.R. 2013) (García-Gregory, J.).

14

(plaintiff's wife's claims were not subject to arbitration and were stayed pending resolution of plaintiffs' claims).

**B.    Even if the Court does not compel arbitration, Innowave's claims against Sunnova should be dismissed or transferred pursuant to the Houston, Harris County, Texas forum selection clause in the November 15, 2015 Letter Agreement.**

Applicable Law:

 Both Texas and Puerto Rico follow the standards set by the U.S. Supreme Court concerning enforceability of forum selection clauses in M/S Bremen v. Zapata Offshore Co., 407 U.S. 1 (1972).  See Rafael Rodríguez Barril, Inc. v. Conbraco Industries, Inc., 619 F.3d 90, 92 (1st Cir. 2010); Rivera v. Centro Médico de Turabo, Inc., 575 F.3d 10, 16-17 (1st Cir. 2009); Intercall Telecommunciations v. Instant Impact, Inc., 376 F.Supp. 2d 155 (D.P.R. 2005)(García Gregory, J.); In re Automated Collections Techs., Inc., 156 S.W.3d 557, 559 (Tex. 2004).

Under those standards, "the general rule is that forum selection clauses are prima facie valid unless enforcement is shown by the resisting party to be unreasonable under the circumstances."  See Silva v. Encyclopedia Brittanica, Inc., 239 F.3d 385, 386 (1st Cir. 2001), quoting, M/S Bremen v. Zapata Offshore Co., 407 U.S. at 10.   "To defeat the enforcement of a forum selection agreement must show that the particular clause: 1) was not freely negotiated or was the result of fraud; 2) contravenes a strong public policy of the forum where the suit is brought; or 3) the party challenging its enforceability shows that trial in the contractual forum will be gravely difficult and inconvenient that it will, for all practical purposes, be deprived of its day in court."  See Intercall Telecommunications v. Instant Impact, Inc., 375 F.Supp. 2d 155 (D.P.R. 2005)(Garcia-Gregory J.).

28 U.S.C. §1404(a) is a codification of the *forum non conveniens* doctrine which provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a

district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." Pursuant to the U.S. Supreme Court's Opinion in <u>Atlantic Marine Const. Co. v. U.S. District Court for the Eastern District of Texas</u>, 134 S.Ct. 568 (2013), the presence of a valid forum choice clause alters the usual 1404(a) analysis in three ways: (a) plaintiff's choice of forum merits no weight and as the party defying the forum selection clause, the plaintiff bears "the burden of showing why the court should not transfer the case to the forum to which the parties agreed"; (b) "a court evaluating a defendant's 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests"; (c) "when a party bound by forum-selection clause flouts its contractual obligation and files suit in a different forum, a §1404(a) will not carry with it the original venue rules." <u>See</u> 134 S.Ct. at 582. Consequently, a district court may only consider arguments about public factors and "[b]ecause those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases…[which] will not be common". <u>Id</u>. The public factors include "the administrative difficulties flowing from Court congestion, the local interest in having localized disputes resolved at home; [and] the interest in having the trial of diversity case in a forum that is at home with the law." <u>Atlantic Marine Const. Co. v. U.S. District Court for the Eastern District of Texas,</u> 134 S.Ct. at note 6, <u>citing</u> <u>Norwood v. Kirkpatrick</u>, 349 U.S. 29, 32 (1955).

Under First Circuit precedent, "a motion to dismiss based upon a forum selection clause is treated as one alleging the failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). <u>Silva v. Encyclopedia Britannica, Inc.</u>, 239 F. 3d at p. 386; <u>Rivera v. Centro Médico de Turabo, Inc.</u>, 575 F.3d at 15; <u>see also</u> <u>Rafael Rodríguez Barril, Inc. v. Conbraco Industries, Inc.</u>, 619 F.3d at 92 ("We review <u>de novo</u> a district court's Rule

12(b)(6) dismissal based on a forum selection clause).[1]

Discussion:

If arbitration is not compelled, then all claims purportedly made in the Amended Complaint, save for the "Fourth Cause of Action", should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) and the Houston, Harris County, Texas forum selection clause in the November, 2015 Letter Agreement between Sunnova, Innowave Energy, Inc. and Code Green Solar, LLC.   Dismissal is the proper course of action because the aforementioned forum selection clause does not select a federal forum and instead mandates that ""[v]enue under any dispute hereunder shall be in Houston, Harris County, Texas." See Section II, supra at ¶ O (emphasis added).  Cf. Rafael Rodríguez Barril, Inc. v. Conbraco Industries, Inc., supra (affirming transfer where the forum selection clause provided that jurisdiction "will lie only in the state and federal courts sitting in Mecklenberg County, North Carolina"); Caribbean Restaurants, LLC v. Burger Corporation, 23 F.Supp. 3d 70 (D.P.R. 2014)(ordering transfer instead of dismissal where the forum selection clause provided that the U.S. District Court for the Southern District of Florida would be exclusive and proper forum).

**The claims made in the Amended Complaint are a breach of the November 17, 2015 Letter Agreement and thus subject to its forum selection clause.**  In the November 17, 2015 Letter Agreement,  Code Green and Innowave granted Sunnova a release from any and all claims arising from or in any way relating the to the transaction whereby Code Green Puerto Rico purchased assets from Innowave.   Code Green and Innowave granted this

---

[1] The standard governing motions under Fed. Civ. P. 12(b)(6) is discussed in Section III. C. infra.  In Atlantic Marine Const. Co. v. U.S. District Court for the Eastern District of Texas,   supra, the U.S. Supreme Court declined to reach the question of whether dismissal pursuant to Fed. R. Civ. P. 12(b)(6) is a means of enforcement of a choice of forum clause.   The Supreme Court did, however, conclude that: (a) Fed. R. 12 (b)(3) is not an appropriate enforcement mechanism because the question of whether venue is proper or not is governed by federal venue statues; (b)  28 U.S.C. 1404(a) is an appropriate enforcement mechanism when the transferee forum is within the federal system and; (c) the forum non conveniens doctrine is an appropriate enforcement mechanism when the selected forum is non-federal forum. 134 S. Ct. at 580.

release on behalf of themselves and of their related juridical and natural persons". <u>See</u> Section II, <u>supra</u> at ¶ N. And Code Green and Innowave also agreed not sue each other or Sunnova with respect to the claims covered by the release.  <u>Id</u>.

**The November 17, 2015 Letter Agreement's forum selection clause is mandatory**. As noted above, the forum selection clause provides that ""[*v*]*enue under any dispute hereunder <u>shall be</u> in Houston, Harris County, Texas*."    The First Circuit has construed "commanding words" such as "shall" or "must" as mandatory.  <u>See</u> e.g. <u>Silva v. Encyclopedia Brittanica</u>, 239 F.3d at 388-89.

**The Amended Complaint is devoid of allegations that the November 17, 2015 Letter Agreement's forum selection clause was not freely selected or negotiated or was the result of fraud**.  The Amended Complaint avers "since Kartsaklis threatened to withhold the payment if she did not sign the document, she [Arynette Rivera Olivera] proceeded to sign it, contemporaneous to signing the Asset Purchase Agreement."  Dkt. 11 at ¶ 88.    That bare allegation is not even directed at the choice of forum clause itself as required by case law from this Court.  <u>See Intercall Telecommunications v. Instant Impact, Inc.</u>, 375 F. Supp 2d at p. 160 (holding that "Courts must distinguish between challenges to the validity of the underlying contract on the one hand, and to the validity of the forum selection clause in particular, on the other.").

**The November 17, 2015 Letter Agreement's forum selection clause does <u>not</u> contravene a strong public policy of the Commonwealth of Puerto Rico.**    There is no "strong public policy" of the Commonwealth of Puerto Rico forbidding forum selection clauses or forbidding litigation of breach of contract and damages claims in a forum outside of the Island.

**Innowave is barred from showing that trial in Houston, Harris County, Texas, will**

**be gravely difficult and inconvenient.**   If Innowave did not want to litigate in Houston, Harris County, Texas, then it should <u>not</u> have signed the Innowave CPA. <u>See</u> <u>Intercall Telecommunciations v. Instant Impact, Inc.</u>, 375 F. Supp. 2d at 160.  Moreover, Innowave had previously agreed to resolve disputes in in Houston, Texas as that forum was also selected as the locus or place for arbitration in Article 18.1 of the Channel Partner Agreement between Innowave and Sunnova.  <u>See</u> Section II, <u>supra</u> at ¶ J.

   If the Court finds that the language of the forum selection clause does not foreclose a transfer within the federal system, then Sunnova requests that the Court transfer the case to the U.S. District Court for the Southern District of Texas which is located in Houston, Harris County, Texas.   "When parties have contracted in advance to litigate disputes in a particular forum, courts should necessarily disrupt the parties' settled expectations…In all but the most unusual cases, therefore, "the interest of justice" is served by holding parties to their bargain." <u>Caribbean Restaurants, LLC v. Burger Corporation</u>, 23 F.Supp. 3d  at 78, <u>quoting</u> <u>Atlantic Marine Const. Co. v. U.S. District Court for the Eastern District of Texas</u>, 134 S.Ct. at 583. Consideration of the "public factors" weighs in favor of the transfer.

   <u>First</u>, "'the administrative difficulties flowing from court congestion" support transfer to the U.S. District Court for the Southern District of Texas" because "[i]is not unknown that the District of Puerto Rico has one of the most congested criminal and civil dockets in the nation." <u>See</u> <u>Caribbean Restaurants, LLC v. Burger Corporation</u>, 23 F.Supp. 3d at 78.

   <u>Second</u>, the "interest in having localized disputes resolved at home." also supports transfer because Innowave agreed to Texas choice of law clauses <u>in both</u> the Channel Partner Agreement and in the November 15, 2015 Letter Agreement with Sunnova and with Code Green LLC.  Thus, "home" for both agreements is in Texas.  <u>See</u> Section II, <u>supra</u> at ¶¶ K & O; <u>Caribbean Restaurants, LLC v. Burger Corporation</u>, 23 F.Supp. 3d at 78.

Lastly, the "interest in having the trial of diversity case in a forum that is at home with the law" also weighs in favor of transfer because the U.S. District Court for the Southern District of Texas is more familiar with Texas law which, again, was selected as the controlling law of both the  Innowave CPA and the November 17, 2015 Letter Agreement with Sunnova and with Code Green LLC. See Section II, supra at ¶¶ K & O; Caribbean Restaurants, LLC v. Burger Corporation, 23 F.Supp. 3d at 78.

**C.** **The Amended Complaint's Fourth Cause of Action should be dismissed for failure to state a claim upon which relief can be granted because 18 U.S.C. § 1028 & 1028A are federal criminal statutes that do not provide a private right of action and because of its naked assertions which fail to meet the plausibility standard.**

Applicable Law:

Fed. R. Civ. P. 12(b)(6) requires dismissal of a complaint that "fails to state a claim upon which relief can be granted." ).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts to state a claim that is "plausible" on its face, and the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quotations marks, citations and footnote omitted).   "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  Id.  A complaint will not stand if it offers only "naked assertion[s]" devoid of "further factual enhancements." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 557).

In determining whether a complaint has stated a plausible, non-speculative claim for relief, "courts must consider the complaint in its entirety, as well as other sources courts

ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).

Discussion:

The Amended Complaint's Fourth Cause of Action should be dismissed for failure to state a claim upon which relief can be granted because 18 U.S.C. §§ 1028 & 1028A are federal criminal statutes that do not provide for private right of action.   See Wellings-Crispin v. Compitello, 120 Fed. Appx. 885 (2005)(2nd Cir 2005)("As to the Identity Fraud Claims, the Complaint contains no allegations that bear any relation to identity fraud, and in any case relies on statutes that are not privately enforceable").

Assuming for argument's sake, that Puerto Rico's General Tort Statute could be used to derive a  private state-law tort claim from a federal criminal statute such as 18 U.S.C. § 1028 or 1028A,  dismissal would still be required as the Amended Complaint is devoid of even a formulaic recitation of the elements of the purported claim.   Indeed, the Complaint's allegations concerning identity theft aver that:

> 104   In addition to Code Green Puerto Rico's non-compliance, Defendants continued enacting sales contracts with their clients under Rivera's name, using her electronic signature. This course of action continued from November 30th to at least, January 31, 2016, totaling, at least, $7,888,037.19 in sales.

> 105.   In fact, Code Green and Sunnova jointly executed over four hundred and fifty (450) new Solar System Work Orders and certifications under Rivera's signature during that period. Those wanton and unauthorized acts constitute acts of Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A.

> 148,   These actions on Code Green Puerto Rico's, Kartsaklis's and Sunnova's behalf constitute fraud, Identity Theft, under 18 U.S.C. § 1028, and/or Aggravated Identify Theft, under 18 U.S.C. 1028A, and are the proximate cause of the following damages experimented by the Plaintiffs:

> > a.  damage to their credit;

> > b.  emotional distress and anguish;

       c. pecuniary damages, including loss of their business and other business opportunities.

149. In consequence, the Plaintiffs hereby demand Code Green Puerto Rico, Kartsaklis and Sunnova to indemnify the damages they caused to Plaintiffs, as to which Defendants are jointly liable.

Dkt. 11 at ¶¶ 104, 105 & 148.   These conclusory allegations lack any allegations of specific facts as to the mechanics of how defendants could appropriate themselves of Ms. Rivera's electronic signature.   Moreover, the bald and conclusory allegation that her electronic signature was used "*without her authorization*" is also insufficient to state a plausible claim for identity theft.  See Ortega Ayala v. Toledo Davila, 2011 W.L. 5241461 (D.P.R. 2011)(Garcia-Gregory, J.)(Allegations that two employees of the Puerto Rico Transportation Department were involved in theft of the plaintiffs' identity and provided false information to the police were "bare facts"" "insufficient to nudge the claims from conceivable to plausible").

**IV.**

**PRAYER FOR RELIEF**

WHEREFORE, Sunnova Energy Corporation requests:

A. that pursuant to Sections 3 & 4 of the Federal Arbitration Act the Court issue an order compelling Innova Home Solutions, Inc. (formerly known as Innowave Energy, Inc.) to arbitrate its purported claims against Sunnova, dismissing such claims without prejudice and staying this lawsuit as to the non-signatories to the Channel Partner Agreement between Sunnova and Innowave Energy, Inc. pending resolution of said arbitration;

B. As alternate relief as to all claims except for the "*Fourth Cause of Action"*, Sunnova requests that the Court dismiss the Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and the Houston, Harris County, Texas forum selection clause in the

November 17, 2015 Letter Agreement between Sunnova, Innowave Energy, Inc. and Code Green Solar, LLC.  If the Court finds that the language of the forum selection clause does not foreclose a transfer within the federal system, then Sunnova requests that the Court transfer the case to the U.S. District Court for the Southern District of Texas which is located in Houston, Harris County, Texas.

C.   And also pursuant to Fed. R. Civ. P. 12(b)(6), Sunnova requests that the Court dismiss the Amended Complaint's "*Fourth Cause of Action*" for failure to state a claim upon which relief can be granted.

RESPECTFULLY SUBMITTED.

CERTIFICATE OF SERVICE: It is hereby certified that on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to counsel of record which are CM/ECF system participants at their corresponding e-mail addresses and which, pursuant to Local Civil Rule 5.1(b)(2), constitutes the equivalent service.

In San Juan, Puerto Rico, this 7th day of November, 2016.

By: *s / Raúl M. Arias*
    Raúl M. Arias
USDC-PR No. 209706

**McCONNELL VALDÉS LLC**
Attorneys for Defendant
SUNNOVA ENERGY CORP.
PO Box 364225
San Juan, PR 00936-4225
Telephone (787) 250-2604
Fax: (787) 759-8282
rma@mcvpr.com