IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| WILLIAM RODRÍGUEZ RODRÍGUEZ; ARYNETTE RIVERA OLIVERAS; and, INNOVA HOME SOLUTIONS, INC., <br><br> Plaintiffs, <br><br> v. <br><br> CODE GREEN SOLAR PUERTO RICO, LLC; CODE GREEN SOLAR, LLC; CHARLES KARTSAKLIS; SUNNOVA ENERGY CORPORATION, <br><br> Defendants. | CIVIL No. 16-2674 (JAG) <br><br> RE: Breach of Contract; Deceit and Error in Contracting; Damages; and Restitution <br><br><br> Plaintiffs Demand Trial by Jury |

## RESPONSE IN OPPOSITION TO AMENDED MOTION TO DISMISS AND TO COMPEL ARBITRATION AT DOCKET NO. 36

**TO THE HONORABLE COURT:**

**COME NOW** Plaintiffs William Rodríguez Rodríguez, Arynette Rivera Oliveras ("Rivera"), and Innova Home Solutions, Inc. (formerly known as Innowave Energy, Inc.) ("Innowave") (collectively, "Plaintiffs"), through the undersigned counsel, and state and pray as follows:

### I.    Introduction

Plaintiffs filed an Amended Complaint against Code Green Solar Puerto Rico, LLC (Code Green Puerto Rico), Code Green Solar, LLC ("Code Green"), Charles Kartsaklis ("Kartsaklis") (collectively, "the Code Green defendants"), and Sunnova Energy Corporation ("Sunnova") for breach of contract, deceit and error in contracting, damages, damages for fraud and identity theft, and restitution of monies improperly received. *See* Docket No. 11. The Amended Complaint stem from the circumstances surrounding the execution of an Asset

Purchase Agreement ("APA") between the Plaintiffs and Code Green Puerto Rico, and the latter's subsequent noncompliance with its terms. As alleged in the Amended Complaint, the United States District Court for the District of Puerto Rico has jurisdiction to entertain this action pursuant to 28 U.S.C. § 1332 because there is complete diversity and the amount in controversy exceeds $75,000.00. *Id.*, ¶ 7. Similarly, venue is proper because all the claims arise from events that occurred and are occurring within the jurisdiction of the Commonwealth of Puerto Rico. *Id.*, ¶ 8.

On November 7, 2016, Sunnova filed a "Motion to Compel Arbitration, or to Enforce Forum Selection Clause and Dismiss" premised on: (1) an arbitration clause contained in the Channel Partner Agreement between Innowave and Sunnova; and, (2) a forum selection clause included in a general release the Code Green defendants secured in Sunnova's favor immediately after and contemporaneous to the execution of the APA ("the Sunnova general release"). *See* Docket No. 13. On December 27, 2016, the Code Green defendants filed an "Amended Motion to Dismiss and to Compel Arbitration" premised on the same grounds and arguments as Sunnova's. *See* Docket No. 36. On January 27, 2017, the Plaintiffs and Sunnova filed a "Stipulation of Partial Dismissal with Prejudice Pursuant to F.R.C.P. 41(a)(1)(A)(ii)." *See* Docket No. 46. In consequence, this Honorable Court issued a Partial Judgment dismissing the case with prejudice as to Sunnova. *See* Docket No. 47.

The Code Green defendants' Amended Motion to Dismiss and to Compel Arbitration must be denied because: (1) the applicable forum selection clause is the one contained in the APA signed by the Plaintiffs and Code Green Puerto Rico, which provides that "each party irrevocably submits to the exclusive jurisdiction" of the "federal courts of the United States of America or the courts of Puerto Rico in each case located in the city of San Juan," *see* Docket

No. 18-1, at 25, ¶ 7.11; (2) the forum selection clause contained in the Sunnova general release is unenforceable due to overreaching, fraud and inconvenience; and, (3) there exists no valid arbitration agreement between the Plaintiffs and the Code Green defendants, and the latter may not invoke the arbitration clause contained in the Channel Partner Agreement executed by Sunnova and Innowave.

## II.   Discussion

### A.  The forum selection clause that applies to the instant case is the one contained in the APA signed by the Plaintiffs and Code Green Puerto Rico, which specifically designates this Honorable Court as the appropriate forum

The Code Green defendants argue that the Court should dismiss the action pursuant to a forum selection clause contained in the Sunnova general release (which the Code Green defendants identify as a "Letter Agreement"). Although the Code Green defendants recognize that the APA signed by the Plaintiffs and Code Green Puerto Rico contains a forum selection clause of its own (choosing the local or federal courts in San Juan, Puerto Rico) and that Plaintiffs' claims stem from the execution of said APA, their position is that the APA's forum selection clause is merely permissive whereas the forum selection clause contained in the Sunnova general release is mandatory. Thus, the Code Green defendants reason that the adequate forum to entertain Plaintiffs' claim is in Houston, Texas. The Code Green defendants' analysis is flawed because the forum selection clause contained in the APA signed by the Plaintiffs and Code Green Puerto Rico is mandatory. As such, it should be enforced by this Honorable Court.

"Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory." *Claudio-De León v. Sistema Universitario Ana G. Méndez*, 775 F.3d 41, 46 (1st Cir. 2014) *citing Rivera v. Centro Médico de Turabo, Inc.,* 575 F.3d 10, 17 (1st Cir. 2009). This Honorable Court defines a mandatory clause

as "one that requires that the litigation be brought **only in the chosen forum, to the exclusion of others**." *Intercall Telecommunications, Inc. v. Instant Impact, Inc.*, 376 F.Supp.2d 155, 158 (D. P.R. 2005) (J. García Gregory) (our emphasis). On the other hand, permissive forum selection clauses "allow[ ] the parties to litigate in the chosen forum, but **do[ ] not purport to exclude them from litigating in some other forum that otherwise has jurisdiction**." *Id.* (our emphasis). Hence, mandatory forum selection clauses "generally evince an intent by the parties to limit the appropriate forum for all claims arising under the agreement to a particular court." *Prestige Capital Corp. v. Pipeliners of Puerto Rico, Inc.*, 849 F.Supp.2d 240, 246 (D. P.R. 2012). Example of typical mandatory terms include "shall," "will," "exclusively," "only," or "must." *Id.*

The forum selection clause contained in section 7.11 of the APA signed by the Plaintiffs and Code Green Puerto Rico states that:

> Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the courts of Puerto Rico in each case located in the city of San Juan, and **each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding**.

*See* Docket No. 18-1, at 25, ¶7.11 (emphasis ours). Focusing on the word "may," the Code Green defendants insist that the APA's forum selection clause is permissive. The Code Green defendants, however, fail to analyze the whole forum selection clause in its context. *See Padilla-Ruiz v. ComTek Communications Technologies*, 2010 WL 1728311 at *5 ("context is determinative" in analyzing mandatory forum selection clauses). The word "may" as used in this forum selection clause refers to the two contracted forums where any action arising out of the APA may be filed. These two forums (the federal or local courts located in San Juan, Puerto Rico), however, have the "exclusive jurisdiction" of any such actions, to which the Plaintiffs and

4

Code Green Puerto Rico submitted "irrevocably." The "exclusive jurisdiction" and "irrevocable" submission terms used in the APA's forum selection clause demonstrate the parties' intention to exclude other forums. *See Prestige Capital Corp.*, 849 F.Supp.2d at 246; *Redondo Const. Corp. v. Banco Exterior de España, S.A.*, 11 F.3d 3, 6 (1st Cir. 1993) (mandatory forum selection clauses show the parties' intention of negatively excluding other proper jurisdictions). Therefore, the forum selection clause contained in the APA is mandatory and the Code Green defendants are bound to litigate this case in either the local or federal courts of San Juan, Puerto Rico.

As a matter of fact, the APA's forum selection clause is almost identical to the clause examined by this same Court in *Intercall Telecommunications, Inc.*, which stated that the parties "irrevocably [submit] to the exclusive jurisdiction of the State and Federal Courts located in Maryland for purposes of any suit, action, proceeding or judgment which directly or indirectly relates to or arises from this Agreement." *Intercall Telecommunications, Inc.*, 376 F.Supp.2d at 159. In analyzing the quoted language, this Honorable Court held that the forum selection clause was mandatory because "[t]his is, indeed, very sweeping and unequivocal language." *Id*. The same result is warranted in the instant case.

Since the forum selection clause contained in the APA is mandatory and this Court is one of the courts to which jurisdiction the parties irrevocable submitted to, the case should not be dismissed. The Code Green defendants will try to rebut this fact arguing that the forum selection clause contained in the Sunnova general release is mandatory as well. However, even if that were the case, the APA's forum selection clause will further prevail pursuant to section 7.05 of the APA, which the Code Green defendants failed to mention in any of their filings. This section states as follows:

> This Agreement and the documents to be delivered hereunder constitute the sole and entire agreement of the parties to this Agreement with respect to the subject

matter contained herein, **and supersede all prior and contemporaneous**
**understandings and agreements, both written and oral, with respect to such**
**subject matter. In the event of any inconsistency between the statements in**
**the body of this Agreement and the documents to be delivered hereunder, the**
**Exhibits and Disclosure Schedules (other than an exception expressly set**
**forth as such in the Disclosure Schedules), the statement in the body of this**
**Agreement will control**.

*See* Docket No. 18-1, at 24, ¶ 7.05 (emphasis ours). The Code Green defendants contend that the

Sunnova general release was "an integral part of the transaction" with the Plaintiffs and an

ancillary document to the same. Even though the Plaintiffs disagree with this characterization for

the reasons stated in the Amended Complaint, which will be discussed in more detail in the

upcoming section, the truth of the matter is that the forum selection of the Sunnova general

release – in Houston, Texas – is inconsistent with the APA's forum selection clause – in the

federal or local courts located in San Juan, Puerto Rico. Thus, regardless of whether the Sunnova

general release was one of the documents to be delivered under the APA, the APA's forum

selection clause prevails over the inconsistent terms of the Sunnova general release's choice of

forum.

In conclusion, this Honorable Court has jurisdiction over the instant suit pursuant to 28

U.S.C. § 1332 and the mandatory forum selection clause contained in the APA. The forum

selection clause contained in the Sunnova general release cannot alter this result because it is

inconsistent with the APA's choice of forum and, pursuant to section 7.05 of the APA, its terms

will control in case of inconsistencies. Further, that same section of the APA states that its terms

"supersede all prior and contemporaneous understandings […] with respect to such subject

matter." *See* Docket No. 18-1, at 24, ¶ 7.05. In this case, the Amended Complaint clearly states

that the Sunnova general release was executed contemporaneous to the signature of the APA. *See*

Docket No. 11, ¶¶ 87 & 88. Therefore, the Plaintiffs filed this case in the appropriate forum and

the Court must deny the Code Green defendants' request for dismissal in favor of the jurisdiction of the courts of Houston, Texas.

### B.  The forum selection clause of the Sunnova general release is unenforceable

This Honorable Court should also refrain from dismissing the case in favor of the jurisdiction of the courts of Houston, Texas because the forum selection clause contained in the Sunnova general release is unenforceable. After the Supreme Court's decision in *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972), forum selection clauses are *prima facie* valid. However, they should be found unenforceable when: (1) they are the product of fraud or overreaching; (2) enforcement would be unreasonable or unjust; (3) proceedings in the contractual forum would be gravely inconvenient; or, (4) their enforcement contravenes a strong public policy of the initial forum. *See Rafael Rodríguez Barril, Inc., v. Conbraco Indus.*, 619 F.3d 90, 93 (1st Cir. 2010). Since it was the product of overreaching and fraud and the proceedings in Houston, Texas would gravely inconvenience the Plaintiffs, the Sunnova general release's choice of forum clause is unenforceable.

### 1.  Overreaching

Although the First Circuit describes it as a "nebulous concept at best," *Rivera*, 575 F.3d at 21, overreaching refers to "one party's unfair exploitation of its overwhelming bargaining power or influence over the other party. […] There must be some evidence that the party has exploited this bargaining power in a way that the courts will not tolerate." *Id*. In *Intercall Telecommunications, Inc.* this Honorable Court correlated overreaching in the forum selection clause context with a contractual provision that is "not freely negotiated." *Intercall Telecommunications, Inc.*, 376 F.Supp.2d at 159.

The Code Green defendants suggest that the Plaintiffs revised the Sunnova general

release and, thus, cannot claim that its signature was the product of overreaching. A close look at the allegations of the Amended Complaint, nonetheless, reveals that, among other things: (1) the Plaintiffs were not provided with copies of the exhibits or schedules to the APA for their review prior to signing the APA, *see* Docket No. 11, ¶ 80; (2) the Code Green defendants did not afford the Plaintiffs the opportunity to review the exhibits or schedules even at the time of signature of the APA because they represented that these documents were identical to the documents that had been uploaded to the Code Green defendants' attorneys' cloud system, *see* Docket No. 11, ¶ 84; (3) the Code Green defendants' attorneys for the transaction questioned Kartsaklis if he had brought something on behalf of Sunnova after the APA had been signed, at which time Kartsaklis informed the Plaintiffs that they needed to sign the Sunnova general release in order to receive the $100,000.00 payment that was due upon execution of the APA, *see* Docket No. 11, ¶¶ 86 & 87; (4) the Plaintiffs had not seen the Sunnova general release prior to this time and it was not discussed during the APA negotiations, *see* Docket No. 11, ¶¶ 87 & 89; and, (5) Kartsaklis threatened to withhold the $100,000.00 payment that was due upon execution of the APA if Rivera did not sign the Sunnova general release, reason why she signed it, *see* Docket No. 11, ¶ 88.

Taken as true, as they must at this stage of the proceedings, the allegations included in the Amended Complaint show that the Code Green defendants engaged in the unlawful exploitation of their bargaining power over the Plaintiffs. The Code Green defendants did not allow the Plaintiffs to review the Sunnova general release prior to its signature. Quite the opposite, the Code Green defendants, through Kartsaklis, conditioned the payment of the sum due at the execution of the APA to the signature of the Sunnova general release and even threatened the Plaintiffs with withholding the payment, thus forcing Rivera to sign the Sunnova general release

to obtain what was rightfully Plaintiffs'. The Sunnova general release was already printed and signed by John Bates from Sunnova, who was not present at the time of the closing. Therefore, the Plaintiffs were in no position to bargain or negotiate the terms to be included in the Sunnova general release.

Furthermore, contrary to the Code Green defendants, the Plaintiffs were not represented or accompanied by counsel at the time.   These circumstances reveal that the forum selection clause of the Sunnova general release was not freely negotiated, but was rather obtained through overreaching. *See e.g. Caribbean Restaurants, LLC v. Burger Kind Corp.*, 23 F.Supp.3d 70, 78-80 (D. PR 2014) (No overreaching were the parties were advised by counsel as to effect of the forum selection clause and the "home" of the contract was the selected forum. The clause was "freely negotiated.")  In consequence, the forum selection clause contained in the Sunnova general release is unenforceable and the motion to dismiss must be denied.

### 2.  Fraud

"A contract is voidable (and thus unenforceable) if 'a party's manifestation of assent is induced by either a fraudulent or material misrepresentation by the other party upon which the recipient is justified in relying.'" *Rivera*, 575 F.3d at 20 (internal quotations omitted). As previously discussed in section II(B)(1), the allegations of the Amended Complaint establish that the Code Green defendants secured the Sunnova general release by conditioning and threatening to withhold the payment of the sum due at the execution of the APA if Rivera failed to sign it. These actions occurred after and contemporaneous to Plaintiffs' signing of the APA and in the absence of any legal representation on their behalf. Considering these circumstances, Rivera's signature of the Sunnova general release was justified because she believed in Kartsaklis' misrepresentation that the payment of the sum due at the execution of the APA was conditioned

to that final signature. Since the forum selection clause was obtained through fraud, it is unenforceable.

### 3. Inconvenience

Under First Circuit precedent, a party resisting enforcement of a forum selection clause bears a heavy burden of proof which "demands more of a litigant […] than simply showing that another location would be more convenient." *In re Mercurio*, 402 F.3d 62, 66 (1st Cir. 2005). In our District, the convenience of the witnesses and the presence or absence of meaningful contacts with the forum are factors to consider in analyzing the inconvenience of enforcing a forum selection clause. *See Marel Corp v. Encad Inc.*, 178 F.Supp.2d 56, 59 (D. P.R. 2001). Recognizing that there is no precise formula for determining whether the enforcement of a forum selection clause is inconvenient, other District Courts under the First Circuit have identified the following nine factors as relevant for the inconvenience analysis:

> (i) the law governing the contract in question; (ii) the place of execution of the contract; (iii) the place where the transactions have been or will be performed; (iv) the availability of remedies in the contractually designated forum; (v) the public policy of the plaintiff's choice of forum state; (vi) the location of the parties, convenience of witnesses and accessibility of evidence; (vii) the relative bargaining power of the parties and the circumstances of their negotiations; (viii) the presence of fraud or other undue influence; and (ix) the conduct of the parties.

*Somerville Auto Transport Service, Inc. v. Automotive Finance Corp.*, 691 F.Supp.2d 267, 272-73 (D. Mass. 2010) *quoting with approval Doe v. Seacamp Ass'n*, 276 F.Supp.2d 222, 225 (D. Mass. 2003); *D'Antuono v. CCH Computax Systems, Inc.*, 570 F.Supp. 708, 712 (D. R.I. 1983).

The Code Green defendants argue that the Plaintiffs cannot show that they would be unduly inconvenienced by litigating the instant matter in Houston, Texas because: (1) they received the Sunnova general release prior to signing it and its terms are clear and unambiguous; (2) they had previously agreed to arbitrate their claims against Sunnova in Houston, Texas; and,

(3) Sunnova has its principal place of business in Houston, Texas, therefore, Sunnova's evidence and witnesses reside in Texas. Thus, the Code Green defendants limit their analysis to Sunnova's convenience and to rule out the possibility of overreaching, fraud or undue influence. However, Sunnova's convenience is of no consequence since this Honorable Court dismissed the case against it with prejudice. *See* Docket No. 47. As to the allegation that the Plaintiffs received the Sunnova general release prior to signing it, the Plaintiffs most respectfully refer this Honorable Court to sections II(B)(1) and II(B)(2) above, in which the circumstances surrounding the signature of the Sunnova general release are discussed.

On the other hand, the majority of the factors relevant to an inconvenience analysis militate against the Houston, Texas forum. <u>First</u>, although the Sunnova general release has a choice of law provision in favor of the laws of the State of Texas, that choice of law clause does not apply to controversies under the APA. The Sunnova general release states that "[t]his letter agreement shall be governed and construed in accordance with the laws of the State of Texas." *See* Docket No. 36-1, at 2, ¶ 4. In contrast, the APA "shall be governed by and construed in accordance with the internal laws of Puerto Rico without giving effect to any choice or conflict of law provision or rule (whether of the Puerto Rico or any other jurisdiction)." *See* Docket No. 18-1, at 25, ¶ 7.10. Thus, pursuant to its own terms, the Sunnova general release's choice of law does not apply to the instant case, which does not arise under it, but under the APA. Even if this were not the case, the Sunnova general release's choice of law provision still would not control this action because it is inconsistent with the APA's choice of law clause, which must prevail over inconsistent languages, pursuant to Section 7.05 of the APA. *See* Docket No. 18-1, at 24, ¶ 7.05. Therefore, under either interpretation, the governing law of the contract in question in this case is the law of Puerto Rico. <u>Second</u>, both the APA and the Sunnova general release were

executed in Puerto Rico. *See* Docket No. 11, ¶¶ 74-88. Third, the transactions object of both the APA and the Sunnova general release occurred in Puerto Rico. Fourth, the Plaintiffs, their evidence and witnesses are located in Puerto Rico, whereas the Code Green defendants, their evidence and witnesses are located **both** in Puerto Rico and in New Jersey. *See* Docket No. 11, ¶¶ 10-14 & Docket No. 36, at 13, fn 3. Fifth, the circumstances surrounding the signature of the Sunnova general release, as discussed in sections II(B)(1) and II(B)(2) of this motion, demonstrate the Code Green defendants' bargaining power over the Plaintiffs. Sixth, as discussed in sections II(B)(1) and II(B)(2), the Code Green defendants secured Rivera's signature of the Sunnova general release through fraud and undue influence. Finally, the Code Green defendants have refused to comply with the terms of the APA, despite Plaintiffs' numerous efforts. Therefore, most the factors relevant for the inconvenience analysis militate against dismissing this case in favor of the Houston, Texas forum. In consequence, the forum selection clause contained in the Sunnova general release is unenforceable due to its inconvenience to the Plaintiffs.

### C. The Code Green defendants cannot invoke the arbitration clause contained in the Channel Partner Agreement executed by Sunnova and Innowave

As an alternate argument, the Code Green defendants move the Court to compel the Plaintiffs to arbitration under an arbitration clause contained in the Channel Partner Agreement executed by Sunnova and Innowave. To this end, the Code Green defendants argue that the Plaintiffs' claims rely on the terms of said Channel Partner Agreement. Therefore, although the Code Green parties recognize that they are not signatories to the same, they maintain to be entitled to invoke the arbitration clause under the equitable estoppel doctrine. The Code Green defendants developed this argument contingent on Sunnova's invocation of the arbitration clause contained in the Channel Partner Agreement it had executed with Innowave. **At this stage,**

**however, Sunnova is no longer a party to the instant case, since this case was dismissed with prejudice as to it**. *See* Docket No. 47. In consequence, there is no valid arbitration agreement between the parties to be enforced, and the Code Green defendants are not entitled to invoke the arbitration clause contained in the Sunnova-Innowave Channel Partner Agreement. Thus, the Court should deny the Code Green defendants' attempt to compel the Plaintiffs to arbitrate their claims against them.

"[A] party who attempts to compel arbitration must show that (1) a valid agreement to arbitrate exists, (2) that the movant is entitled to invoke the arbitration clause; (3) that the other party is bound by that clause, and (4) that the claim asserted comes within the clause's scope." *González v. Hurley Intern., Inc.*, 763 F.Supp.2d 288, 291-92 (D. P.R. 2011). Although both local and federal public policy favor it, "arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Communication Workers of Am.*, 475 U.S. 643, 648 (1986). The Code Green defendants cannot evince any of the requirements for compelling arbitration.

### 1.    There is no valid agreement to arbitrate between the Plaintiffs and the Code Green defendants

A party seeking to compel arbitration must show, "at a bare minimum, that the protagonists have agreed to arbitrate *some* claims." *McCarthy v. Azure*, 22 F.3d 351, 355 (1st Cir. 1994). Thus, the moving party must demonstrate the existence of the agreement and identify the protagonists of the same. *Id*. The Code Green defendants cannot show the existence of a valid agreement to arbitrate between themselves and the Plaintiffs. As a matter of fact, the APA, which is the written agreement signed by the Plaintiffs and Code Green Puerto Rico, does not contain an arbitration agreement. Rather, it contains a forum selection clause that specifically contemplates that any legal suit, action or proceeding arising out of or in any way related to it

must be brought before the judicial forums (either local or federal) of San Juan, Puerto Rico. *See* Docket No. 18-1, at 25, ¶ 7.11.

Aware that it cannot comply with the "bare minim[al]" burden of proof to compel arbitration, the Code Green defendants aver that the arbitration clause contained in the Sunnova-Innowave Channel Partner Agreement is applicable to the instant action. Such is not the case First, Sunnova is no longer a party to this action, since this Court issued a partial judgment dismissing the case with prejudice as to it. *See* Docket No. 47. Second, even if the Sunnova-Innowave Channel Partner Agreement arbitration clause applied to the instant case and the Code Green defendants were entitled to invoke it – in the upcoming sections the Plaintiffs will show that this is not the case -, the choice of forum clause contained in the subsequent APA constitutes an express waiver of the right to arbitrate. *See Jones Motor Co. v. Teamsters Local Union No. 633*, 671 F.2d 38, 42 (1st Cir. 1982) (Recognizing that parties may waive their rights under an arbitration agreement and that such a waiver may be express or implied.)

Absent a valid agreement to arbitrate between the Plaintiffs and the Code Green defendants, the latters' request for compelling arbitration must be denied.

### 2. The Code Green defendants are not entitled to invoke the arbitration clause in the Sunnova-Innowave Channel Partner Agreement

The Code Green defendants recognize that they are not signatories to the Sunnova-Innowave Channel Partner Agreement. Therefore, they move this Court to compel arbitration of the action pursuant to the equitable estoppel doctrine as applied to arbitration clauses. The application of this doctrine, however, is unwarranted in this case.

The general rule is that "nonsignatories to an arbitration agreement cannot be bound by that agreement." *Cabrera-Morales v. UBS Trust Co. of Puerto Rico*, 769 F.Supp.2d 67, 71 (D. P.R. 2011). "The natural upshot of this principle is that courts must be extremely cautious about

forcing arbitration upon parties who are not clearly bound to arbitrate." *P.L. Services LP v. Millenium Const., Inc.*, 328 F.Supp.2d 245, 248-49 (D. P.R. 2004) *quoting InterGen N.V. v. Grina*, 344 F.3d 134, 143 (1st Cir. 2003). The doctrine of equitable estoppel in the context of arbitration clauses is an exception to this general principle. "[T]he doctrine of equitable estoppel precludes a party from enjoying rights and benefits under a contract while at the same time avoiding its burdens and obligations." *InterGen N.V.*, 344 F.3d at 145. In order to invoke an arbitration clause in an equitable estoppel context, the nonsignatory must establish that: (1) the "'entire case hinge[s] on [ ] rights under' the agreement containing the arbitration clause," *Cabrera-Morales*, 769 F.Supp.2d at 72; (2) the claims are "intricately intertwined with those against the [signatory]," *P.L. Services LP*, 328 F.Supp.2d at 250; or, (3) the arbitration clause covers disputes with nonsignatories, *id*.

The Code Green defendants failed to demonstrate any of the circumstances recognized by this District for invoking an arbitration clause under the equitable estoppel doctrine. Although the Code Green defendants allege that the claims brought against it are "intertwined and interdependent" with the claims brought against Sunnova and the terms of the Sunnova-Innowave Channel Partner Agreement, this stereotyped allegation falls short of establishing that the "entire case hinge[s]" on the Sunnova-Innowave Channel Partner Agreement. In fact, the Code Green defendants will not be able to comply with this burden, since all the causes of action contained in the Amended Complaint against them are related to the APA, the circumstances surrounding its signature and Code Green Puerto Rico's subsequent noncompliance with its terms. Whether the claims against the Code Green defendants are "intricately intertwined with those against" Sunnova is of no consequence at this point, since this Court dismissed the instant action with prejudice as to Sunnova. *See* Docket No. 47. Finally, the arbitration clause contained

in the Sunnova-Innowave Channel Partner Agreement does not cover disputes with nonsignatories, since it is limited to "the Parties" as that term is defined in the initial paragraphs of the Channel Partner Agreement. *See* Docket No. 15-1, at 6 & 26 (1 & 21 of the document's internal numeration), ¶ 18.1.[1]

In a final effort to invoke the arbitration clause of the Sunnova-Innowave Channel Partner Agreement, the Code Green defendants quote the First Circuit's decision in *Restoration Preservation Masonry, Inc. v. Grove Europe Ltd.*, 325 F.3d 54 (1st Cir. 2003) for the proposition that they are entitled to compel arbitration because they acquired Innowave's assets, including its business relationship with Sunnova. This is simply a *non sequitur*.

We explain. Notice that if the Code Green defendants acquired Innowave's rights under the Sunnova-Innowave Channel Partner Agreement, they would assume Innowave's position in it. Therefore, they would not be able to invoke any of its provisions against Innowave, but only against Sunnova. *De facto*, after November 25, 2015, only Sunnova and Code Green Puerto Rico were parties to the Channel Partner Agreement, thus the Code Green defendants could only oppose the arbitration clause to Sunnova and vice versa. Once again, since Sunnova is absent from this case pursuant to this Court's dismissal with prejudice, the Code Green defendants are not entitled to invoke the arbitration agreement contained in the Innowave-Sunnova Channel Partner Agreement.

### 3. The Plaintiffs are no longer bound by the arbitration clause of the Sunnova-Innowave Channel Partner Agreement

In addition, the Code Green defendants cannot establish that the Plaintiffs are currently bound by the arbitration clause contained in the Sunnova-Innowave Channel Partner Agreement.

---

[1]  In order to maintain the confidentiality of the Channel Partner Agreement, the Plaintiffs refrain from divulging its terms in the instant motion and most respectfully refer the Court to Docket No. 15-1, where Sunnova filed the document as restricted.

As per the Code Green defendants' own allegations, the Sunnova-Innowave Channel Partner Agreement was assigned to Code Green Puerto Rico in virtue of the Sunnova general release. Therefore, Innowave is no longer a party to the agreement that contains the arbitration clause. Pursuant to Article 11 of the Channel Partner Agreement, Innowave's obligation to arbitrate survives the termination or expiration of the agreement. *See* Docket No. 15-1, at 20-21 (15-16 of the document's internal numeration), ¶ 11.4.[2] However, Innowave's obligation to arbitrate does not survive assignment. Thus, as per the Code Green defendants' own allegations, the Plaintiffs are no longer bound by the arbitration clause of the Sunnova-Innowave Channel Partner Agreement and should not be compelled to arbitrate their claims.

        **4.**      **The claims asserted against the Code Green defendants are not within the scope of the Sunnova-Innowave Channel Partner Agreement**

Finally, the Code Green defendants rely on the fact that the Plaintiffs brought certain claims against them and Sunnova to conclude that the action falls within the scope of the Sunnova-Innowave Channel Partner Agreement. This is not the case. First, this Court already dismissed with prejudice the claims against Sunnova. Second, the Plaintiffs' claims against the Code Green defendants – as explicitly recognized by them in their Amended Motion to Dismiss and to Compel Arbitration, Docket No. 36, at 7 – "arise from execution of the APA and its ancillary documents" and Code Green Puerto Rico's subsequent noncompliance with the terms of the same. In fact, none of the causes of action is premised on the Channel Partner Agreement, nor do the Plaintiffs request any remedies pursuant to it. Thus, the claims asserted against the Code Green defendants are not within the scope of the Channel Partner Agreement.

In conclusion, the Code Green defendants' request to compel arbitration must be denied

---

[2] In order to maintain the confidentiality of the Channel Partner Agreement, the Plaintiffs refrain from divulging its terms in the instant motion and most respectfully refer the Court to Docket No. 15-1, where Sunnova filed the document as restricted.

because: (1) there is no valid arbitration agreement between the Plaintiffs and the Code Green defendants; (2) the Code Green defendants are not entitled to invoke the arbitration agreement contained in the Sunnova-Innowave Channel Partner Agreement; (3) Innowave is no longer bound by the arbitration agreement contained in the Sunnova-Innowave Channel Partner Agreement; and, (4) the claims asserted against the Code Green defendants do not fall within it.

### III. <u>Conclusion</u>

Contrary to the Code Green defendants' position, this Court should not dismiss this case. Pursuant to section 7.05 of the APA, its forum selection clause (section 7.11) is mandatory and must prevail over the inconsistent forum selection clause contained in the Sunnova general release and/or any agreement executed prior or contemporaneous to the APA. In addition, the Sunnova general release's forum selection clause is unenforceable due to overreaching, fraud and inconvenience. Finally, there is no valid agreement to arbitrate between the Plaintiffs and the Code Green defendants, and the latter are not entitled to invoke the arbitration clause of the Sunnova-Innowave Channel Partner Agreement against the Plaintiffs.

WHEREFORE, the Plaintiffs respectfully request this Honorable Court to deny the Code Green defendants' Amended Motion to Dismiss and to Compel Arbitration at Docket No. 36.

**RESPECTFULLY SUBMITTED.**

In Guaynabo, Puerto Rico, this 2nd day of February, 2017.

/s/Thomas Trebilcock Horan
Thomas Trebilcock-Horan
USDC Bar: 220514
Ochoa Building
500 Tanca St, Suite 201
San Juan, PR 00902
ttrebilcock@trebilcockrovira.com

**ARROYO & RÍOS LAW OFFICES, P.S.C.**
PMB 688, 1353 Luis Vigoreaux Avenue
Guaynabo, P.R. 00966
Tel.: (787) 522-8080
Fax: (787) 523-5696

s/Moraima S. Ríos Robles
Moraima S. Ríos-Robles
USDC-PR 224912
mrios@arroyorioslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I filed an exact copy of this document with the Clerk of the Court using the CM/ECF System, which will send notice electronically to all counsel of record.

*/s/ Moraima S. Ríos Robles*
Moraima S. Ríos Robles
USDC-PR No. 224912