IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **WILLIAM RODRÍGUEZ RODÍGUEZ,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **CODE GREEN SOLAR PUERTO RICO,** *et al.*, <br><br> Defendants. | Civil No. 16-2674 (JAG/BJM) |

## REPORT AND RECOMMENDATION

William Rodríguez Rodríguez, Arynette Rivera Olivera, and Innova Home Solutions, Inc. (collectively, "Innova") brought suit against Code Green Solar Puerto Rico, L.L.C., Code Green Solar, L.L.C., Charles Kartsaklis, and Sunnova Energy Corporation (collectively, "Code Green"), alleging breach of contract, rescission of contract, negligence, fraud, and aggravated identity theft. Docket No. 11 (amended complaint, "Compl."). The claims against Sunnova Energy Corporation ("Sunnova") were dismissed with prejudice. Docket No. 47. Code Green moved to dismiss, arguing that Innova must bring its suit in Texas state court as mandated by a forum-selection clause and, alternatively, moved to dismiss and compel arbitration in Texas or have the proceedings stayed pending the outcome of arbitration between Sunnova and Innova. Docket Nos. 36, 56. Innova opposed, arguing that a different forum-selection clause mandates that this case be heard in Puerto Rico. Docket Nos. 48, 61. This matter was referred to me for a report and recommendation. Docket No. 62.

For the following reasons, Code Green's motion should be **DENIED.**

## APPLICAPLE STANDARD

In the First Circuit, a motion to dismiss based on a forum-selection clause is treated "as a motion alleging the failure to state a claim for which relief can be granted under Rule 12(b)(6)." *Claudio-De Leon* v. *Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st

Rodríguez Rodríguez et al. v. Code Green Solar Puerto Rico et al., Civil No. 16-2674 (JAG/BJM)                    2

Cir. 2014) (quoting *Rivera* v. *Centro Médico de Turabo, Inc.*, 575 F.3d 10, 15 (1st Cir. 2009)). In *Atlantic Marine Co., Inc.* v. *U.S. District Court*, 134 S. Ct. 568, 580 (2013), the Supreme Court held that "the appropriate way to enforce a forum-selection clause pointing to a state or foreign forum is through the doctrine of *forum non conveniens*." Reasoning that the Court "explicitly declined to express a view as to whether a Rule 12(b)(6) motion is a proper alternative," the First Circuit has held that "absent a clear statement from the Supreme Court to the contrary, the use of Rule 12(b)(6) to evaluate forum-selection clauses is still permissible in this Circuit." *Claudio-De Leon*, 775 F.3d at 46 n.3 (citing *Atl. Marine*, 134 S. Ct. at 579–80). Accordingly, I evaluate Code Green's motion under Rule 12(b)(6).

Under Rule 12(b)(6), "the district court must 'accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences therefrom in the plaintiff's favor, and determine whether the complaint, so read, limns facts sufficient to justify recovery on any cognizable theory.'" *Rivera*, 575 F.3d at 15 (quoting *LaChapelle* v. *Berkshire Life Ins. Co.*, 142 F.3d 507, 508 (1st Cir. 1998)). And though review at this stage is generally limited to the allegations in the complaint, the First Circuit has recognized an exception: "the district court, may consider 'documents the authenticity of which are not disputed by the parties,' 'documents central to plaintiffs' claim,' and 'documents sufficiently referred to in the complaint.'" *Claudio-De Leon*, 775 F.3d at 46 (quoting *Rivera*, 575 F.3d at 15). The contracts between Innova and Code Green and the contract between Innova and Sunnova are such documents; therefore, they may be considered at this stage for the purpose of determining the enforceability of the contracts' forum-selection and arbitration clauses. *See Claudio-De Leon*, 775 F.3d at 46.

**BACKGROUND**

The following facts are drawn from the allegations in Innova's amended complaint, as well as the contracts referred to in the complaint and the motion to dismiss.

In May 2014, Innova started selling and installing solar panels to homeowners and businesses in Puerto Rico. Compl. ¶¶ 16, 17. On June 17, 2014, Innova executed a Channel

Partner Agreement ("CPA") with Sunnova, a business that finances solar-energy projects. *Id.* ¶¶ 19, 21. The CPA contains an arbitration clause:

> Any dispute, controversy, difference, or claim arising out of or in connection with this Agreement, or the breach, termination or validity of this Agreement, which cannot be amicably resolved by the Parties shall be submitted to final and binding arbitration in Houston Texas, in accordance with Commercial Arbitration Rules of the American Arbitration Association (the "<u>AAA Commercial Rules</u>"). The arbitration shall be conducted by one arbitrator who shall be appointed in accordance with the AAA Commercial Rules. If any Party is authorized by the AAA Commercial Rules to nominate, select, approve or disapprove an arbitrator but fails to do so within thirty (30) days after filing of the demand for arbitration, such arbitrator shall be appointed by the American Arbitration Association upon request of the other Party.

CPA art. 18.1, Docket No. 38-1 at 2.

Sunnova withheld payments due to Innova and pressured Innova to sell its operation to buyers Sunnova introduced. Compl. ¶¶ 31, 38, 40, 45. Sunnova threatened to terminate the CPA if Innova did not sell the company to one of these buyers. *Id.* ¶ 50. Under pressure from Sunnova's threats, Innova agreed to sell its operation to Code Green, Sunnova's installation partner in New Jersey. *Id.* ¶¶ 49, 55, 64, 71, 74.

Innova and Code Green met on November 25, 2015, to close the sale. *Id.* ¶ 74. At 7:00 the two parties signed the Asset Purchase Agreement ("APA"). *Id.* ¶¶ 81, 82. The APA also contains a forum-selection clause:

> Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the Courts of Puerto Rico in each case located in the city of San Juan, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

APA § 7.11, Docket No. 18-1 at 30. In addition to the forum-selection clause, the APA contains a merger and integration clause:

> This Agreement and the documents to be delivered hereunder constitute the sole and entire Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and

> agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder, the Exhibits and Disclosure Schedules (other than an exception expressly set forth as such in the Disclosure Schedules), the statements in the body of this Agreement will control.

APA § 7.05, Docket No. 18-1 at 29.

After the APA had been executed, Code Green produced the Letter Agreement ("LA") and stated that Innova had to sign it in order to receive the payment due at closing. Compl. ¶¶ 86, 87. The LA was a general release from Sunova and was "[f]or and in consideration of the continuation of the [CPA] by Sunnova Energy Corporation . . . with CODE [sic] Green following its acquisition of the assets of Innowave . . . ." *Id.* ¶ 87, Docket No. 36-1 at 1. Innova had never seen this document before. Compl. ¶ 87. The LA is dated November 17, 2015, with the signatures dated November 20, and the complaint stating it was signed November 25 at 9:00. Docket No. 36-1 at 1, 3, Compl. ¶ 88. The LA also has a forum-selection clause:

> This letter agreement shall be governed by and construed in accordance with the laws of the State of Texas. Venue of any dispute hereunder shall be in Houston, Harris County, Texas. In any suit to enforce this Agreement, the prevailing party shall have the right to recover its costs and reasonable attorney's fees and expenses, including costs, fees and expenses on appeal.

LA art. 4, Docket 36-1 at 2.

In December 2015, Innova started receiving collection calls from many different companies that were supposed to be Code Green's responsibility. Compl. ¶ 96. Code Green never responded to Innova's repeated attempts to contact Code Green. *Id.* ¶¶ 97, 98, 101. By late December, Code Green was defaulting on its obligations under the APA and this breach of contract continued until the filing of the initial complaint. *Id.* ¶¶ 103, 109.

***Innova's Amended Complaint***

The first cause of action is for breach of contract arising under "Article 1077 of the Puerto Rico Civil Code, 31 Laws of P.R. ann. § 3052." Compl. ¶ 121. Innova alleges that

Code Green failed to make the final payment of $100,000, pay consulting fees to Rodríguez, assume the vehicle lease contracts, and make the assumed liability payments, totaling over $2,000,000. *Id.* ¶ 123. In response, Innova seeks to rescind the APA and demands the return of all consideration exchanged as part of the APA. *Id.* ¶¶ 124, 125.

The second cause of action alleges deceit and error in the method of contracting against Code Green and Sunnova "under Articles 1217, 1218, 1220, and 1221 of the Puerto Rico Civil Code, 31 Law of PR Ann. §§ 3404, 3405, 3407, & 3408." *Id.* ¶ 128. Innova alleges that the defendants agreed to oust Innova from the solar-panel-systems market in order to take over Innova's operation. *Id.* ¶ 132. Innova also alleges that Code Green changed the assumed liabilities schedule during the closing. *Id.* ¶ 135.

The third cause of action requests damages under Article 1802 of the Puerto Rico Civil Code; the fourth cause of action requests damages for fraud and identity theft "under Article 1802 of the Puerto Rico Civil Code." *Id.* ¶¶ 139, 140, 145. Innova alleges that after the closing, Code Green continued executing sales contracts under Arynette Rivera's name without her authorization, totaling over $7,000,000 in sales. *Id.* ¶ 147.

The fifth, and last, cause of action is for restitution of monies improperly received "under Articles 1795, 1796, and 1801 of the Puerto Rico Civil Code, 31 Laws of P.R. Ann. §§ 5121, 5122 & 5127." *Id.* ¶ 151. As part of the consideration for the APA, Code Green was to receive Innova's accounts receivable of over $9,000,000, but Code Green actually received $19,000,000. *Id.* ¶ 155. Innova alleges that Code Green owes it over $9,000,000. *Id.* ¶ 157.

## DISCUSSION

Code Green contends that Innova's complaint should be dismissed because the forum-section clause contained in the LA provides that "[v]enue of any dispute hereunder shall be in Houston, Harris Country Texas." LA art. 4, Docket No. 36-1 at 2, Docket No. 36 at 3. Innova counters that the forum-selection clause in the APA controls:

> Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the Courts of Puerto Rico in each case located in the city of San Juan, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

APA § 7.11, Docket No. 18-1 at 30; Docket No. 48 at 4. Innova claims that this forum-selection clause should control over the forum-selection clause in the LA because the APA contains a merger and integration clause:

> This Agreement and the documents to be delivered hereunder constitute the sole and entire Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter. In the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder, the Exhibits and Disclosure Schedules (other than an exception expressly set forth as such in the Disclosure Schedules), the statements in the body of this Agreement will control.

APA § 7.05, Docket No. 18-1 at 29; Docket No. 48 at 5-6. To decide which forum-selection clause applies, it is necessary to determine whether the LA is one of the documents to be "delivered hereunder" and, if so, whether there are inconsistencies between the forum-selection clauses.

***Forum-Selection Clauses in the LA and APA***

The APA is governed by Puerto Rico Law because section 7.10 of the APA contains a choice-of-law provision. *See Huffington* v. *T.C. Grp., LLC*, 637 F.3d 18, 21 (1st Cir. 2011). Neither party contends Puerto Rico law "varies from ordinary contract principles," and so the scope inquiry turns on "plain language, attributed purpose, available precedent, and any background policy considerations that may bear." *Id.* Under Puerto Rico law, "[a]rticle 1233 determines the manner in which courts should interpret contracts under dispute as to the meaning of their terms. The Article is strict in its mandate that courts

should enforce the literal sense of a written contract, unless the words are somehow contrary to the intent of the parties." *Hopgood* v. *Merrill Lynch,* 839 F. Supp. 98, 104 (D.P.R. 1993). "If the terms of a contract are clear and leave no doubt as to the intentions of the contracting parties, the literal sense of its stipulations shall be observed." P.R. Laws Ann. tit. 31, § 3471; *IOM Corp.* v. *Brown-Forman Corp.*, 553 F. Supp. 2d 58, 63 (D.P.R. 2007). The merger clause in the APA is clear: "[i]n the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder . . . the statements in the body of this Agreement [the APA] will control." APA § 7.05, Docket No. 18-1 at 29.

First, it must be determined whether the LA is a "document[ ] to be delivered hereunder" for the APA. Code Green acknowledges in its amended motion to dismiss that the LA was "an integral part of the transaction" for the APA and provides a helpful cite to section 2.02(a) of the APA, titled "Closing Deliverables":

> (a) At the closing, Seller [Innowave] and Seller Equityholder [Rodriguez and Rivera] shall deliver to Code Green the following: . . .
>
> (ix) evidence of assignment, amendment, or termination as of the Closing date of the Channel Partner Agreement ('CPA') between Sunnova Energy Corp ('Sunnova') and Seller, in the form as deemed appropriate by Sunnova, wherein the CPA is either assigned to Code Green or deemed terminated as of closing date; . . . .

APA § 2.02(a), Docket No. 36 at 3. Since Code Green admits that the LA was an integral part of the transaction, was brought and signed at the same closing as the APA, and was to be delivered at the closing, a "plain reading" of the APA should lead this court to find that the LA was a "document[ ] to be delivered hereunder" pursuant to the APA.

Next, it must be determined whether the APA and the LA have inconsistent statements, because "[i]n the event of any inconsistency between the statements in the body

of this Agreement and the documents to be delivered hereunder . . . the statements in the body of this Agreement [the APA] will control." APA § 7.05, Docket No. 18-1 at 29. At first blush, the two clauses appear inconsistent: the LA's forum-selection clause chooses Texas as the appropriate forum, and the APA has a forum-selection clause that chooses Puerto Rico. However, it must be determined whether the forum-selection clauses are mandatory or permissive to decide if they are indeed inconsistent.

Neither party disputes that the forum-selection clause in the LA is mandatory: "[v]enue of any dispute hereunder shall be in Houston, Harris County, Texas." LA art. 4, Docket 36-1 at 2. Because the forum-selection clause uses the term "shall," it is mandatory. *See Rivera*, 575 F.3d at 17 n.5 ("typical mandatory terms" include "shall," "exclusive," "only," or "must").

Whether the forum-selection clause in the APA is mandatory or permissive is hotly contested by the parties. Docket No. 36 at 4-6; Docket No. 48 at 1-2; Docket No. 56 at 1-2; Docket No. 61 at 2-3. The forum-selection clause in the APA states as follows:

> Any legal suit, action or proceeding arising out of or based upon this Agreement or the transactions contemplated hereby may be instituted in the federal courts of the United States of America or the Courts of Puerto Rico in each case located in the city of San Juan, and each party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

APA § 7.11, Docket No. 18-1 at 30. Code Green latches onto the phrase "may be instituted" and argues that this makes the clause permissive. Docket No. 36 at 3. This is a crabbed reading; it ignores the second half of the clause. Because the forum-selection clause uses the terms "irrevocably submit" and "exclusive jurisdiction," it is mandatory. *See Rivera*, 575 F.3d at 17 n.5 ("typical mandatory terms" include "shall," "exclusive," "only," or "must"); *Silva v. Encyclopedia Britannica Inc.*, 239 F.3d 385, 388 n.6 (1st Cir. 2001)

("exclusive jurisdiction" in the context of a forum-selection clause "refers to the intent of the parties [to have the court decline jurisdiction] rather than the actual power of the court"). The most natural reading of the forum-selection clause as a whole is that the parties agreed to "irrevocably submit to the exclusive jurisdiction" of the courts of San Juan, but they can choose either the federal or state court located therein.

Thus, because both forum-selection clauses are mandatory, they are inconsistent and in conflict. And because "[i]n the event of any inconsistency between the statements in the body of this Agreement and the documents to be delivered hereunder . . . the statements in the body of this Agreement [the APA] will control," the forum-selection clause of the APA controls over the forum-selection clause in the LA. APA § 7.05, Docket No. 18-1 at 29.

### *Arbitration Clause*

Alternatively, Code Green argues that dismissal is required because of the mandatory arbitration clause contained in the CPA executed between Innowave (now Innova) and Sunnova. Docket No. 36 at 21. The Supreme Court has held that "[a]n agreement to arbitrate before a specified tribunal is, in effect, a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Scherk* v. *Alberto-Culver Co.*, 417 U.S. 506, 519 (1974).

In general, when deciding whether to compel arbitration, the court is charged with determining two "gateway" issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *Howsam* v. *Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002). Federal policy strongly favors arbitration over litigation, so long as an agreement to arbitrate exists in the first place. *See HIM Portland,*

LLC v. *DeVito Builders, Inc.*, 317 F.3d 41, 43 (1st Cir. 2003). The party seeking to compel arbitration has the burden to show the existence of an arbitration agreement. *See Diskin* v. *J.P. Stevens & Co., Inc.*, 836 F.2d 47, 51 (1st Cir. 1988). "Whether or not the parties have agreed to submit a certain dispute to arbitration 'depends on contract interpretation, which is a question of law.'" *Dialysis Access Center, LLC* v. *RMS Lifeline, Inc.*, 638 F.3d 367, 376 (1st Cir. 2011) (quoting *Combined Energies* v. *CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008)). "Arbitration is strictly 'a matter of consent' . . . and thus 'is a way to resolve those disputes—*but only those disputes*—that the parties have agreed to submit to arbitration.'" *Granite Rock Co.* v. *Int'l Bhd. of Teamsters*, 130 S. Ct. 2847, 2857 (2010) (emphasis in original) (quotations omitted) (internal citations omitted)

The first step in determining whether there is an agreement to arbitrate is to see if the CPA is covered by the merger and integration clause of the APA. The first sentence of the merger and integration clause is applicable: "[t]his Agreement and the documents to be delivered hereunder constitute the sole and entire Agreement with respect to the subject matter contained herein, and supersede all prior and contemporaneous understandings and agreements, both written and oral, with respect to such subject matter." APA § 7.05, Docket No. 18-1 at 29.

The LA that Code Green and Innova signed was "[f]or and in consideration of the continuation of the [CPA] by Sunnova Energy Corporation . . . with CODE [sic] Green following its acquisition of the assets of Innowave . . . ." Docket No. 36-1 at 1. As explained above, section 2.02(a) of the APA covers the LA, which is about the CPA continuing between Code Green and Sunnova. Because the LA is contemplated in the APA, and because the CPA is incorporated by reference into the LA, the CPA is within the subject

matter of the APA as a prior agreement. The LA acts as bridge, connecting the CPA and the APA. Indeed, "[t]he Puerto Rico Supreme Court recognizes provisions incorporated by reference when interpreting contracts." *Comite Fiestas De La Calle San Sebastian, Inc.* v. *Cruz*, 170 F. Supp. 3d 271, 274 (D.P.R. 2016); *see also, Benitez–Navarro* v. *Gonzalez–Aponte*, 660 F. Supp. 2d 185, 191 (D.P.R. 2009) (considering contract provisions incorporated by reference when interpreting a contract pursuant to Puerto Rico law). "Contracts need not use the traditional language of 'incorporating by reference' so long as language in the agreements clearly communicate[s] the purpose of incorporating the . . . clause." *Comite Fiestas*, 170 F. Supp. 3d at 274 (citations omitted). Because the CPA is part of the "the subject matter contained herein" of the APA, the merger clause controls and the mandatory forum-selection clause of the APA replaces the arbitration clause in the CPA.

***Stay of Proceedings***

Code Green also requests in the alternative that the court stay the claims against Code Green while arbitration is pending between Innova and Sunnova, arguing that this could clarify and simplify the remaining issues and promote judicial economy. Docket No. 36 at 25. The claims against Code Green are distinct from the claims against Sunnova, and Code Green does not do more than attach one paragraph at the end of a 25-page amended motion to dismiss to suggest that a stay could perhaps simplify the remaining issues, without explaining exactly how or why it would. Thus, a stay should be denied. *See United States* v. *Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.").

## CONCLUSION

For the foregoing reasons, Code Green's motion should be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas* v. *Arn*, 474 U.S. 140, 155 (1985); *Davet* v. *Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co.* v. *Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 991 (1st Cir. 1988); *Borden* v. *Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**

In San Juan, Puerto Rico, this 29th day of June, 2017.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge